# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DULCE CESAR,
        Plaintiff,

    v.                                                       Case No. 07C128

DEBORAH ACHIM and
GARY PRESTON,
        Defendants.

## DECISION AND ORDER

On November 16, 2006, an Immigration Judge ("IJ") ordered Plaintiff Dulce Cesar removed to Haiti. At the same time, the IJ granted plaintiff withholding of removal to Haiti on the ground that his "life or freedom would be threatened in that country." See 8 U.S.C. § 1231(b)(3)(A). Defendants Deborah Achim, a federal immigration official at the Chicago Office of Immigration and Customs Enforcement ("ICE"), and Gary Preston, the Detentions Division Commander at the Kenosha County Sheriff's Department, did not release plaintiff from custody until four months later, on March 16, 2007.

In the present action, plaintiff claims that defendants violated his due process rights by detaining him following the grant of withholding of removal and by failing to provide him with adequate medical care.[1] Plaintiff also alleges that Achim violated his due process rights by unconstitutionally conditioning his right to appeal the removal order on a surrender

---

[1] Although medical care claims for convicted prisoners implicate the Eighth Amendment, because plaintiff is an immigration detainee, his medical care claims against federal defendant Achim arise under the Due Process clause of the Fifth Amendment. See Dahlan v. Dep't of Homeland Sec., 215 Fed. Appx. 97, 100 (3d Cir. 2007).

of his liberty. Plaintiff seeks damages against Achim pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and against Preston pursuant to Bivens or 42 U.S.C. § 1983. Plaintiff also seeks declaratory relief. Before me now is Achim's motion to dismiss the claims against her.[2]

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6),[3] the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir.2007) (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." Id. In addressing a Rule 12(b)(6) motion, I assume that plaintiff's allegations are true and draw all reasonable inferences flowing from them in the light most favorable to plaintiff. Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir.1990).

## I. CLAIMS RELATED TO DETENTION

The statutory provisions governing post-order detention are found in 8 U.S.C. § 1231. Specifically, § 1231(a)(2) provides that during the 90-day period following a final removal order (the "removal period"), the Attorney General[4] shall detain the individual

---

[2] Also before me is plaintiff's motion to clarify the prayer for relief and defendant Preston's motion for leave to file an amended answer to the complaint. These motions were rendered moot by the subsequent filing of an amended complaint, and I will deny them as such.

[3] Achim filed a motion to dismiss or, in the alternative for summary judgment. However, pursuant to the parties' agreement, I will treat it as a motion to dismiss under Rule 12(b)(6).

[4] The statute says "Attorney General," but since 2003, the immigration functions involved in this case have been transferred to the Department of Homeland Security. See 6 U.S.C. § 251. Thus, any reference to "Attorney General" actually refers to the

2

subject to the final removal order. The provision further specifies that "[u]nder no circumstance during the removal period shall the Attorney General release an alien who has been found . . . deportable under section 1227(a)(2) . . . of this title." Further, under § 1231(a)(6), the Attorney General, in his discretion, may continue to detain an alien found deportable under § 1227(a)(2) after the removal period expires. These provisions all are applicable in this case, as plaintiff was ordered removed upon a finding of deportability under § 1227(a)(2)(A)(iii) based on an aggravated felony conviction.

Thus, § 1231(a)(2) <u>requires</u> the Attorney General to detain an individual who, like plaintiff, was found deportable under § 1227(a)(2) for at least ninety days following the final removal order. Additionally, § 1231(a)(6) allows discretionary detention of such an individual beyond the removal period. While the statute itself does not limit the duration of such discretionary detention, the Supreme Court in <u>Zadvydas v. Davis</u> noted that it would violate due process to detain an alien ordered removed where removal was not reasonably foreseeable. 533 U.S. 678, 700-01 (2001). The Court therefore construed the provision to save it from constitutional infirmity and to eliminate the specter of indefinite detention, placing limitations, discussed below, on the length of time an alien could be detained in post-order custody pursuant to § 1231(a)(6). <u>Id.</u>

Defendant Achim first argues that no <u>Bivens</u> remedy is available for the claims relating to plaintiff's custody because the Immigration and Nationality Act ("INA") is a comprehensive statutory scheme, the existence of which is a "special factor[] counseling hesitation" in inferring a <u>Bivens</u> remedy. See <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 423

---

responsible officials within the Department of Homeland Security, including the officials at ICE.

3

(1988) (refusing to infer a Bivens remedy in an action involving a denial of disability benefits, where the Social Security Act was a comprehensive statutory scheme that included adequate remedial provisions). To support this argument, defendant cites to provisions of the INA, such as those codified at 8 U.S.C. §§ 1226 & 1231, and suggests that "this intricate and carefully crafted remedial scheme" signifies that Congress has provided adequate means of addressing constitutional violations, thereby precluding a Bivens action for damages.

This argument is unpersuasive. The provisions defendant cites contain nothing of a remedial nature, much less an "intricate and carefully crafted" remedial scheme. They are merely regulatory, defining the Attorney General's powers and duties regarding the detention and removal of aliens, and do not mention or provide any means of redress for constitutional violations. See, e.g., Khorrami v. Rolince, 493 F. Supp. 2d 1061, 1073-74 (N.D. Ill. 2007). Given that the Supreme Court has already recognized that a Bivens action is an appropriate means of redressing violations of the Due Process Clause of the Fifth Amendment, I see no reason why it would be inappropriate here. See Davis v. Passman, 442 U.S. 228, 245 (1979) ("'Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty.'") (quoting Bivens, 403 U.S. at 395).

Defendant Achim also argues, in the alternative, that even if I find a Bivens remedy to be appropriate in this action, the claims against her should be dismissed based on qualified immunity.[5] Qualified immunity shields defendants "from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which

---

[5] Defendant Preston has asserted a qualified immunity defense, and this discussion is applicable to him as well.

4

a reasonable person would have known.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity issue should be resolved at the earliest possible stage of litigation, and the analysis can be conducted solely on the facts alleged in the complaint. See Delgado v. Jones, 282 F.3d 511, 515 & 516 n.1 (7th Cir. 2002); see also Landstrom v. Ill. Dep't of Children and Family Servs., 892 F.2d 670, 674 (7th Cir. 1990) (upholding district court's dismissal of claims on a Rule 12(b)(6) motion based on qualified immunity, where the presence or absence of facts in the complaint had no effect on the immunity decision, which was solely a matter of law). The threshold inquiry a court must undertake in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).

With respect to the claim that plaintiff's detention unconstitutionally burdened his right to appeal the removal order, the claim fails to state a constitutional violation. The "unconstitutional conditions" doctrine prohibits the government from unreasonably conditioning the receipt of a benefit on the required sacrifice of a constitutional right. Dolan v. City of Tigard, 512 U.S. 374, 385 (1994). However, conditions can be lawfully imposed on the receipt of a benefit, provided the conditions are reasonable. Burgess v. Lowery, 201 F.3d 942, 947 (7th Cir. 2000). In determining whether a condition is reasonable, the government interest and the justification for the imposed condition must be taken into account, as well as the nature of the required sacrifice. Snepp v. United States, 444 U.S. 507, 510 n.3 (1980).

Plaintiff suggests that the detention scheme is unconstitutional because, if he appealed the removal order, he would be detained for the duration of the appeals process

5

and for a minimum of ninety days after, since the removal period would not be triggered until the appeals process concluded and he would not be considered for release until the end of the removal period. If he waived his appeal rights, on the other hand, the removal period would be immediately triggered and he would be considered for release in only ninety days. He argues that the scheme is an unconstitutional burden on his right to appeal because he has to subject himself to prolonged detention to exercise his appeals rights. However, the Supreme Court has already held, after balancing the competing interests at stake, that detention during removal proceedings, including during the appeal of a removal order, is reasonable and does not violate a detainee's Fifth Amendment rights. See Demore v. Kim, 538 U.S. 510, 529 (2003). And detention during the ninety-day removal period is also constitutionally permissible, following the reasoning and approval implicit in Demore and Zadvydas. See Khotesouvan v. Morones, 386 F.3d 1298 (9th Cir. 2004). As such, because detention during removal proceedings and the removal period is constitutionally permissible, it is not an unconstitutional condition on plaintiff's right to appeal.[6] See Demore, 538 U.S. at 531 n.14 ("Respondent contends that the length of detention required to appeal may deter aliens from exercising their right to do so. . . . [H]owever, 'the legal system . . . is replete with situations requiring the making of difficult judgments as to which course to follow,' and . . . there is no constitutional prohibition against requiring parties to make such choices.") (internal citations omitted).

---

[6] The Demore holding relied on statistics showing that removal proceedings, including appeal, are typically brief in duration. Thus, where the duration of detention pursuant to § 1226(c) is unreasonably long because of protracted removal proceedings, including appellate proceedings, the rationale underlying Demore falls away and the holding arguably is inapplicable. See Ly v. Hansen, 351 F.3d 263, 271-73 (6th Cir. 2003).

To the extent plaintiff argues that he was unconstitutionally detained after the removal period expired, the constitutional analysis is less clear cut. The Zadvydas Court's interpretation of 8 U.S.C. § 1231(a)(6) governs this issue. Several courts, including one circuit court, have interpreted Zadvydas as allowing the government to detain an alien pursuant to § 1231(a)(6) for an unhampered six months after an administratively final removal order issues. See, e.g., Okpoju v. Ridge, 115 Fed. Appx. 302 (5th Cir. 2004); Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002); Al-Shewaily v. Mukasey, No. CIV-07-0946-HE, 2007 WL 4480773, at *4 (W.D. Okla. Dec. 18, 2007); Pisenko v. Keisler, No. 1:07-CV-01575 LJO DLB HC, 2007 WL 3231663, at *2 (E.D. Cal. Nov. 1, 2007); Nuculovic v. Chertoff, No. 1:CV-07-0703, 2007 WL 1650613, at *3 (M.D. Pa. June 5, 2007); Francois v. B.I.C.E./D.H.S., No. CIV 06-1578 (JLL), 2006 WL 3373156, at *5 (D.N.J. Nov. 20, 2006); Kendy v. Ashcroft, No. 3-03-CV-0066-H, 2003 WL 21448380, at *2 (N.D. Tex. May 14, 2003); Hodel v. Aguirre, 260 F. Supp. 2d 695, 699 (N.D. Ill. 2003). A close reading of Zadvydas, however, leads me to conclude that this interpretation is incorrect.

The Zadvydas Court held that detention of an alien was constitutionally permissible only for a period reasonably necessary to bring about that alien's removal from the United States. Zadvydas, 533 U.S. at 689. It based this conclusion on the premise that "unless . . . detention is ordered in a criminal proceeding with adequate procedural protections," it is only permissible in narrow, nonpunitive circumstances where a special justification outweighs an individual's liberty interest. Id. at 690. In the context of detention of an alien ordered removed, the only legitimate, generally applicable justification for detention is to ensure the presence of an alien for removal. Id. at 690-91. Thus, the Court noted that where removal seems a remote possibility at best, detention's goal is no longer practically

7

attainable and it no longer "bear[s] [a] reasonable relation to the purpose for which the individual [was] committed." Id. at 690.

The fundamental principle in Zadvydas, then, is that where removal is not reasonably foreseeable, detention is unconstitutional. Id. at 699-700. A court should "measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. If removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized." Id. The Court recognized, however, that such a determination must also "take appropriate account of the greater immigration-related expertise of the Executive Branch." Id. at 700. Balancing considerations of deference with the individual liberty interests at stake, the Court then created two presumptions.

First, in deference to Executive Branch expertise in matters of foreign policy and administrative necessity, the Court held that six months is a reasonable estimate of the maximum time necessary to effectuate most removals, and therefore a six-month period of detention following a final removal order of an alien subject to detention under § 1231(a)(6) is presumptively lawful. Id. at 700-01. Second, the Court interpreted section 1231(a)(6) to create a presumption that if six months after the beginning of the removal period the alien has not been removed, he is entitled to be released if there is no significant likelihood of removal in the reasonably foreseeable future. Id. at 701; see also Hussain v. Mukasey, 510 F.3d 739, 742 (7th Cir. 2007).

Thus, if after six months the alien has not been removed, he is entitled to release if he "provides good reason to believe" that removal is not reasonably foreseeable and the government produces no evidence rebutting that argument. Id. In other words, the

8

government bears the burden of proof if the alien can offer any legitimate argument as to why there is no significant likelihood of removal. Within the six-month window, detention is presumptively lawful.

Nothing about this scheme supports the conclusion drawn by many courts that the presumptive legality of detention within the first six months is irrebuttable. The <u>Zadvydas</u> Court did not say that the presumption is irrebuttable, and there is nothing inherent in the operation of the presumption itself that requires it to be irrebuttable. Rather, the scheme operates merely to shift and alter the burden of proving whether or not detention pursuant to § 1231(a)(6) is permissible. Within the six-month window, the <u>detainee</u> must <u>prove</u> the unreasonableness of detention, and courts must accord great deference to Executive Branch determinations based on foreign policy expertise and administrative necessity. After the expiration of six months, the detainee need only offer a valid reason why removal is unforeseeable, which the <u>government</u> must then <u>disprove</u>. And as time passes, the burden on the government increases accordingly. <u>Zadvydas</u>, 533 U.S. at 701 ("[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."). Thus, the presumption scheme merely suggests that the burden the detainee must carry within the first six months of postorder detention is a heavier one than after six months has elapsed.

Moreover, the Court's justification for the first presumption–that detention for up to six months after the beginning of the removal period is lawful–rests explicitly upon the narrow ground that the Executive Branch, because of its knowledge and expertise, is in a better position than the courts in the early stages of the removal process to determine what

9

is or is not reasonably foreseeable removal and what administrative steps are necessary to effect removal.[7] Id. at 700 (noting that principles of judicial review counsel courts to grant leeway to the Executive Branch <u>when its judgments rest upon foreign policy expertise</u>). Assuming the validity of such justification, it does not follow that all situations involving detention pursuant to § 1231(a)(6) implicate foreign policy and administrative expertise. Where the analysis drifts out of that realm, the justification for the presumption no longer applies.

This notion is not unknown to immigration matters. For example, the rule announced in <u>Demore</u> – that detention pursuant to § 1226(c) during removal proceedings is lawful–is not conclusive. <u>See</u> <u>Demore</u>, 538 U.S. at 531. It relies on the assumption that removal proceedings are brief in duration. Id. at 528-29. As Justice Kennedy stated in his concurrence, however, where the removal proceedings are unreasonably long, the rationale behind the rule does not apply, nor does the rule itself, and the lawfulness of the detention comes into question. Id. at 532-33; <u>see also</u> <u>Hussain</u>, 510 F.3d at 743; <u>Ly</u>, 351 F.3d at 271-73. Thus, an alien detained pursuant to §1226(c) may still state a claim for unlawful detention, despite the general rule announced in <u>Demore</u>, where removal proceedings have lasted for an unreasonably long time.

Similarly, in <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44 (1991), a case the <u>Zadvydas</u> Court expressly relied upon as authority for the creation of a presumption, the presumption that a 48-hour delay in a probable-cause hearing after arrest is reasonable

---

[7] For example, negotiations implicating foreign policy matters committed to the Executive Branch, such as negotiations with a country to receive an alien or negotiations of repatriation agreements, could take time to arrange or complete, and could impact whether or not removal is reasonably foreseeable. <u>Zadvydas</u>, 533 U.S. at 700.

10

is a rebuttable presumption. See Riverside, 500 U.S. at 56. The Riverside Court, creating the presumption to allow police a reasonable window of time to administratively process an arrestee, noted that even a hearing held within the presumptively reasonable 48-hour period "may nonetheless violate [the Constitution] if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." Id. A delay might be considered unreasonable if it were "motivated by ill will against the arrested individual, or delay for delay's sake." Id.

The Zadvydas presumption is analogous to the Riverside presumption. It gives deference to the government when the case involves matters of foreign policy and administrative necessity in the early stages of the removal process, but it does not give the government unfettered discretion to detain. And where the facts of the case do not implicate Executive Branch expertise, the justification for the presumption disappears altogether. The burden might be on the detainee within the first six months to overcome the presumptive legality of his detention, but where an alien can carry that burden, even while giving appropriate deference to any Executive Branch expertise, his detention would be unlawful.

Detention where removal is not reasonably foreseeable is unconstitutional. Zadvydas, 533 U.S. at 699-700. In creating the presumption discussed above, the Supreme Court could not have been condoning detention of an alien where removal is not reasonably foreseeable, as long as it occurred in the first six months. The Court would then be authorizing unconstitutional conduct, which it presumably does not have the power to do. Rather the Court merely recognized the practical necessity of according deference to the Executive Branch determinations of what constitutes "reasonably foreseeable" in the

11

early stages of removal, and therefore placed the burden of proving unreasonableness on the detainee. But, as the Zadvydas Court noted, "[C]ourts can take appropriate account of [Executive Branch expertise] without abdicating their legal responsibility to review the lawfulness of an alien's continued detention." 533 U.S. at 700.

Thus, I conclude that while detention pursuant to § 1231(a)(6) for up to six months is presumptively lawful, an alien may still state a claim for and demonstrate a constitutional violation within the six-month window. In the present case, I do not have enough facts on the record before me to determine whether defendants' conduct violated plaintiff's constitutional rights at this stage of the litigation.[8] However, if plaintiff could show, for example, that the government was not taking steps to effectuate his removal, then there would be no exercise of knowledge or expertise unique to the Executive Branch to justify any deference, removal likely would not be reasonably foreseeable, and detention would therefore be unconstitutional. Thus, the facts alleged in plaintiff's complaint plausibly establish a constitutional violation.

Because a constitutional violation exists "on a favorable view of the parties' submissions, I must next ask whether the [constitutional] right was clearly established," an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. As the Seventh Circuit has explained:

> The words "clearly established . . . constitutional rights" may not be used to read the defense of immunity out of federal tort law by the facile expedient

---

[8] Plaintiff's argument – that because he was granted withholding of removal to the only country named in the removal order, there was no reasonable likelihood of his removal–ignores the possibility of removal to a different country. A grant of withholding of removal is country specific and does not render detention pursuant to § 1231(a)(6) per se unconstitutional. See INS v. Cardoza-Fonseca, 480 U.S. 421, 429 n.6 (1987).

12

> of stating constitutional rights in the most general possible terms. . . . The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful.

Rice v. Burks, 999 F.2d 1172, 1174 (7th Cir. 1993). If the law did not put the officer on notice that his conduct was clearly unlawful, judgment in favor of the officer based on qualified immunity is appropriate with respect to claims for damages. Saucier, 533 U.S. at 202. The burden of proving the existence of a clearly established constitutional right is on the plaintiff, and it is a heavy one because qualified immunity is designed to shield from civil liability "'all but the plainly incompetent or those who knowingly violate the law.'" Hughes v. Meyer, 880 F.2d 967, 971 (7th Cir. 1989) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Plaintiff has failed to meet this burden. Defendants were acting at all times pursuant to statutory authorizations that have been upheld as constitutional by the Supreme Court. Moreover, a number of courts, including other district courts within the Seventh Circuit as well as other circuit courts, have interpreted Zadvydas as creating an irrebuttable presumption that detention within the six-month window is constitutional.[9] In light of these cases, in addition to the relevant statutes and Supreme Court decisions, plaintiff has not met the burden of showing that the constitutional violations, if indeed there were any, were of a clearly established right, and defendants are immune from liability for damages.

---

[9] For example, in one case, the court dismissed an immigration detainee's habeas petition as unripe, because it was filed when petitioner had been detained post-order for less than six months. See Francois, 2006 WL 3373156, at *5. See also Okpoju, 115 Fed. Appx. at 302 ; Akinwale, 287 F.3d at 1052; Al-Shewaily, 2007 WL 4480773, at *4; Pisenko, 2007 WL 3231663, at *2; Nuculovic, 2007 WL 1650613, at *3; Kendy, 2003 WL 21448380, at *2; Hodel, 260 F. Supp. 2d at 699.

13

Additionally, plaintiff's claim for declaratory relief is moot and must therefore be dismissed. The Supreme Court has set forth the standard for determining whether a request for declaratory relief is moot, noting that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Preiser v. Newkirk, 422 U.S. 395, 402 (1975) (citing Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). This rule rests on the principle that federal courts may not issue advisory opinions; rather, "[f]or adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions' are requisite. This is as true of declaratory judgments as any other field." Golden v. Zwickler, 394 U.S. 103, 108 (1969) (citing United Pub. Workers of Am. v. Mitchell, 330 U.S. 75, 89 (1947)).

"An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Preiser, 422 U.S. at 401. Past harm does not constitute an extant controversy unless there is some continuing, present adverse effect. O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974). Additionally, a mere theoretical possibility of future harm is not enough to merit declaratory relief; there must be a reasonable expectation that the same party will be subjected to the same action again. Wernsing v. Thompson, 423 F.3d 732, 745 (7th Cir. 2005).

In this case, plaintiff has been released, but he argues that his release does not render the controversy moot. He focuses on the possibility that he will be redetained in the future, citing to provisions in his release agreement which notify him that he is subject to future detention when necessary to remove him, and argues that this renders his situation

14

"capable of repetition, yet evading review." See DeFunis v. Odegaard, 416 U.S. 312 (1974). I disagree. First, any future detention likely would not implicate the same issues or facts as his past detention. Second, plaintiff's arguments hinge on speculation. Plaintiff cites to two sentences in his release documents that serve only to notify him that efforts to effectuate his removal will continue and that at some point in the future he could be redetained in order to complete his removal. Such detention would be lawful if plaintiff's removal had become reasonably foreseeable, but plaintiff, from these two sentences, hypothesizes a potential unlawful scenario that could arise in the future should the government choose to disregard the rules governing the removal process. However, this allegation requires the inference that just because the government theoretically could act in disregard of the law and the Constitution, it will–an entirely speculative and unfounded inference. See O'Shea, 414 U.S. at 497 (assuming that a party will act in compliance with the law and noting that to suggest otherwise is mere speculation). Plaintiff's other arguments regarding present and future harm are equally speculative.

## II. MEDICAL CARE CLAIMS

Plaintiff claims that defendants violated his Fifth Amendment right to adequate medical care. The same standard used under the Eighth Amendment applies in a due process analysis of whether plaintiff stated a denial of medical care claim. See Dahlan v. Dep't of Homeland Sec., 215 Fed. Appx. 97, 100 (3d Cir. 2007) (noting that an immigration detainee is similarly situated to a pre-trial detainee, and thus any conditions of confinement claim is analyzed according to due process standards); Washington v. LaPorte County Sheriff's Dep't, 306 F.3d 515, 517 (7th Cir. 2002) ("The protections for pre-trial detainees

15

are at least as great as the Eighth Amendment protections available to a convicted prisoner and we frequently consider the standards to be analogous.").

Thus, to establish a medical care claim, a detainee must show that (1) his medical need was objectively serious, and (2) the officials involved acted with deliberate indifference to his health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)). An official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Neither negligence nor even gross negligence is a sufficient basis for liability, see Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991), and an individual cannot be held liable in a Bivens action unless he or she caused or participated in an alleged constitutional deprivation, Gossmeyer v. McDonald, 128 F.3d 481, 494 (7th Cir. 1997). Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable. Id. at 495. Rather, they must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. Id.

Plaintiff alleges that while he was in custody defendants failed to provide him with adequate medical care. Specifically, plaintiff suffers from a number of conditions, including fibromyalgia, hypertension, depression, diabetes, arthritis, hypercholesterinemia, back pain, acid reflux, Graves' disease, and a serious thyroid condition that had previously

16

required a thyroidectomy.  Prior to his detention, plaintiff had been prescribed and was taking a number of medications.  Upon his detention at the Kenosha County Detention Center ("KCDC"), he was initially given only Tylenol.  Despite frequent oral and written requests to KCDC staff for care related to a number of conditions and symptoms, KCDC did not provide adequate care.  The staff confiscated his eyeglasses for two to three months.  They did not regularly test his blood sugar, as necessary for his diabetes.  They did not provide him his thyroid medication until three months after he was taken into custody.  They only provided Tylenol to treat his fibromyalgia, hypertension, diabetes, arthritis, hypercholesterinemia, and back pain.  They did not provide adequate medication to treat plaintiff's depression.  They did not conduct follow up testing to confirm whether or not lesions on plaintiff's lungs revealed by a CAT scan were cancerous.  They did not fill plaintiff's post-surgical prescription for pain medication, and deprived plaintiff of the prescribed post-surgical walking boot even though he still experienced pain when walking. Plaintiff alleges that defendants were aware of all these circumstances but did not attempt to remedy the situation in any manner.

Defendant Achim argues that plaintiff's complaint fails to allege facts indicating that she was personally involved in the alleged denial of medical care.  Achim argues that plaintiff's complaint speaks in "sweeping generalizations" that fail to allege any personal involvement on her part. I disagree. The complaint alleges that "defendants" were aware of the denial of adequate medical care; indeed, defendant Achim admits that the matter was brought to her attention.  The complaint further alleges that despite her knowledge, she failed to remedy the situation.  This is enough to state a claim against Achim for denial of medical care.  Moreover, I do not believe qualified immunity is appropriate at this time,

17

as Achim's alleged conduct, viewed in the light most favorable to plaintiff, could amount to a violation of a clearly established constitutional right. See Estelle, 429 U.S. at 97; Jones v. City of Chicago, 856 F.2d 985, 992-93 (7th Cir. 1988).

Defendant Achim also argues that she received a report about the problems related to plaintiff's medical conditions and subsequently ordered someone to investigate the problem; therefore, she was not deliberately indifferent to plaintiff's health. However, this argument raises new factual allegations that go to the merits of plaintiff's case and is more appropriately addressed on summary judgment.

### III. CONCLUSION

**Therefore,**

**IT IS ORDERED** that defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART** in accordance with this order.

**IT IS FURTHER ORDERED** that plaintiff's motion to clarify the prayer for relief is **DENIED** as moot.

**IT IS FURTHER ORDERED** that defendant Preston's motion for leave to file an amended answer is **DENIED** as moot.

Dated at Milwaukee, Wisconsin this 27 day of March, 2008.

/s
LYNN ADELMAN
District Judge

18